## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JOHNNIE PAUL HARDMAN | : | DOCKET NO.  2:12-cv-2961 |
| VS. | : | JUDGE MINALDI |
| U.S. COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of supplemental security income benefits.  This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court recommends that the Commissioner's decision should be AFFIRMED and this matter DISMISSED with prejudice.

## I.
## PROCEDURAL HISTORY

On April 23, 2010, plaintiff filed an application for supplemental security income benefits alleging disability beginning on January 1, 2008.  Tr. 49, 105-08.  He claimed disability due to sleep apnea, gout, arthritis, high blood pressure, diabetes, heart murmur, shortness of breath, and difficulty walking.  Tr. 49, 122.  The claim was initially denied on July 13, 2010.  Tr. 58-61.  Plaintiff requested and was granted an administrative hearing which was held on May 23, 2011.  Tr. 30-47.  At the beginning of the hearing, plaintiff was informed of his right to representation by an attorney or other representative and he waived that right.  Tr. 33-34, 102.

-1-

Plaintiff and a vocational expert ("VE") testified at the hearing.

On July 1, 2011, the Administrative Law Judge ("ALJ") issued an unfavorable decision. Tr. 13-25.  In his decision, the ALJ found plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform light work with certain limitations and that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  *Id.*

On September 6, 2011, plaintiff, who was now represented by a non-attorney representative, filed a request for appellate review of this decision.  Tr. 103-04.  Through his representative plaintiff submitted additional evidence to the Appeals Council in the form of a psychological evaluation conducted by Jerry L. Whiteman, Ph.D.  Tr. 166-73.  On September 21, 2012, the Appeals Council denied his request for review.  Tr. 1-4.  On November 21, 2012, plaintiff filed suit in this court appealing the determinations of the Commissioner.[1]  Doc. 1.

## II.
## FACTS AND MEDICAL EVIDENCE

### A.  *Facts*

At the hearing on May 23, 2011, plaintiff was 48 years old.  Tr. 34.  He testified that he could not remember how far he went in school but it was either 8th or 9th grade.  He did not obtain a GED.  Tr. 35.  He has five children, is separated, and lives alone.  *Id.*  He testified that he has not been able to work because he gets tired during the day and has serious pain in his knees, hand, hip, and shoulders.  Tr. 36.  When asked what he does all day he replied, "[h]ang around the house, mostly."  *Id.*  He stated that he shops for food and his son prepares meals for him.  Tr. 36.  He could not recall the last time he worked[2] but testified that he looks for work every chance he gets and the last time he looked was a couple of months ago.  Tr. 37-38.  He

---

[1] Plaintiff is represented by counsel in this proceeding.

[2] When the ALJ noted that his earnings report showed he last worked in 2000 he agreed that it was accurate.  Tr. 39.

-2-

looks for jobs that do not require reading or writing and that will accommodate his physical condition.  Tr. 38.

### B.  Medical Evidence

#### 1.  West Calcasieu Cameron Hospital

The medical evidence from West Calcasieu Cameron Hospital indicates that plaintiff was seen in the emergency room on October 23, 2007, complaining of abdominal pain and vomiting. He had a history of hypertension and diabetes, type II, uncontrolled.  He was diagnosed with acute pancreatitis and was treated and released the next day.  Tr. 174-90.  On March 21, 2010, plaintiff was seen in the ER again complaining of abdominal pain.  He was diagnosed with gastritis treated and released.  Tr. 241-61.  Plaintiff was seen in the ER on August 4, 2010, for abdominal cramping, and nausea.  A CT scan revealed a nonspecific bowel gas pattern.  He was diagnosed with peptic ulcer disease and treated and released.  Tr. 340-59.  On November 8, 2010, plaintiff presented in the ER complaining of right arm pain, numbness, and swelling.  An ultrasound of the right extremity revealed no evidence of venous thrombosis.  Tr.  324-39.

#### 2.  W.O. Moss Regional Medical Center

Plaintiff was seen at Moss Regional ER on September 9, 2009, for a prescription refill. He reported that he was feeling sluggish and had symptoms of polyuria and polydipsia.  He was treated and released the same day. Tr. 216-20.  He was seen in the ER again on March 9, 2009. He complained that his ankle was locking up and knee giving out.  No obvious deformities were observed.   X rays were ordered but the records do not show the results.  Tr. 211-14.  On September 5, 2009, he reported to the ER complaining of flu-like symptoms and was treated for a viral illness.  Tr. 207-10.

### 3. *Lake Charles Memorial Hospital*

Records from Lake Charles Memorial Hospital show that plaintiff was seen in the ER on January 8, 2009, for pain in his left ear which was treated as an abscess.  Tr. 191-202.  He was next seen on October 26, 2010, in the ER for abdominal pain and nausea.  A CT scan revealed a simple cyst on the left kidney.  All other findings were normal.  An ECG was abnormal.  He was diagnosed with abdominal pain/gastritis and released.  Tr.295-309.

### 4. *Acadiana Medicine Clinic, APMC*

Results of a spirometry test conducted on November 18, 2009, revealed mild to moderate airway obstruction.  Tr. 231-35.

### 5. *Hilma Green. M.D./SWLA Center for Health Services*

On December 8, 2009, plaintiff was seen by Dr. Green to establish care.  His history included type II diabetes-uncontrolled, hypertension, chronic pain, and anxiety.  Tr. 240.  On January 12, 2010, he was seen for a refill of medication.  He complained of pain in his ankles, blurry vision, increased thirst, and frequent urination.  Tr. 265.  He was seen for follow up care on February 11, 2010, where it was noted that his diabetes and hypertension were uncontrolled.  Tr. 264.  On March 26, 2010, he presented complaining of abdominal pain and was diagnosed with gastroesophageal reflux disease.  Tr. 263.  On May 10, 2010, he was seen for refill of prescriptions and complained of a chest cold, pain in his back, knee and foot.  He requested to see and was referred to a podiatrist for toenail deformity.  Tr. 262.  On July 27, 2010, he complained of toe and foot pain and knee and ankle pain.  He reported that he had not seen the podiatrist.  He also complained of a cold and cough.  He was again referred to a podiatrist for toenail problem.  Tr. 314.

On that same date he saw Melvin Trotter, DPM at the SWLA Center for Health Services. Dr. Trotter diagnosed diabetic neuropathy and prescribed medication.  Tr. 320-23.

### 6.   Sandeep Denduluri, M.D.

Plaintiff underwent a consultative examination performed by Dr. Denduluri on September 26, 2009.  Plaintiff reported a history of sleep apnea, severe tiredness, shortness of breath, and a 15-year history of diabetes and hypertension.   He also reported chest pain, shortness of breath, headaches, and blurred vision.  He stated that he is able to dress himself, stand for 30-40 minutes, and walk one-half block on level ground.  He can sit for 45 minutes and lift 5-10 pounds.  He cannot drive a car.

Upon examination, Dr. Denduluri noted that he was able to get on and off the examining table, in and out of the chair, and dress and undress himself.  He noted labored breathing from the activities of the examination.  His gait was normal, he had difficulty on the heel-to-toe walk, and needed support to squat.   Muscle weakness was noted.   Dr. Denduluri's impression following his exam noted a significant history of hypertension and diabetes and other medical conditions.  He determined that plaintiff was able to sit, stand, walk, lift, carry, speak, see and hear.  He noted obvious side effects of his diabetes and that he was unable to perform the basic physical examination without getting short of breath.  Tr. 204-05.

### 7.   Daniel Denison, M.D.

At the request of disability services Dr. Denison reviewed and interpreted a three-view chest x-ray of plaintiff.  He noted an enlarged heart and multiple bilateral pulmonary infiltrates. Tr. 238.

### 8.  Maria Pons, M.D.

Dr. Pons completed a physical RFC dated July 12, 2010.   She opined that plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk with normal breaks for 2 hours in an 8 hour workday, sit with normal breaks for 6 hours in an 8 hour workday, and was unlimited in his pushing/pulling.  She opined that he should occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl and never climb ladders/ropes/scaffolds.  She did not assign any manipulative, visual, communicative or environmental limitation.  She assigned a light RFC with the noted limitations.  Tr. 54-55, 280-81.

### 9.  Joseph Tramontana, Ph.D.

Dr. Tramontana performed a psychiatric RFC on July 8, 2010 wherein he determined that plaintiff did not suffer from any medically determinable mental impairment.  Tr. 52-53, 278-79.

### 10.  Jerry L. Whiteman, Ph.D.

Plaintiff saw Dr. Whiteman on February 24, 2012, for a psychological evaluation.  This report was not considered by the ALJ in his July 1, 2011, opinion because it was rendered after his opinion was published.  Dr. Whiteman's report is nonetheless part of the administrative record on review in this court because it was submitted to the Appeals Council.  *See Higginbotham v. Barnhart,* 405 F.3d 332, 336 (5th Cir. 2005).

Dr. Whiteman administered the Wechaler Adult Intelligence Scale – IV test, conducted a mental status interview, and made behavioral observations.  He noted that plaintiff displayed independent locomotion and no significant limitations to motor functions were observed.  His health history included diabetes and a cut on his right hand.  He denied ever being in psychological or chemical dependency treatment.  His vision appeared adequate but he could not read the word "life."  His hearing and conversational speech were adequate.

Plaintiff reported dropping out of school while attending Lake Charles Boston High School; however, he could not recall what grade or age he was when he quit and stated that he had bad grades.  He reported working 4-5 years ago at a car lot but could not specify his responsibilities.  He stated that he relies on his son for assistance with household chores and that he sends most of his time watching TV or walking around.  He complained of foot and knee pain and insomnia.

Dr. Whiteman characterized plaintiff's mental status as poor in all spheres.  He noted that he was unable or unwilling to recite the alphabet, does not know who the current president of the United States is, could not count by two's or by three's and refused to make any effort to do so. He reported that plaintiff does know the days of the week.  Plaintiff was able to correctly spell his name and the word "go" but could not spell "girl" or "boy" and would not make any effort to do so.

Dr. Whiteman opined that plaintiff's judgment and insight were poor because he did not know what he would do if he were the first person in a crowd or movie to notice smoke or fire. He also opined that his short term memory and concentration skills were poor.  He noted that plaintiff was only able to recall four digits in the forward direction and required two tries to recall two digits in reverse order.  With repetition he was able to make two correct responses to a three stage command.  He opined that his intermediate memory was also poor because he could not recall any of three items after a five minute delay.

On the Wechaler Adult Intelligence Scale – IV test plaintiff earned a full scale IQ of 42 which reflects moderate mental retardation.  All of his index scores were 50 or below.

Dr. Whiteman's opinioned that plaintiff's cognitive abilities and capacity for adaptive behavior possess moderate deficits which appear to be life-long existing prior to the age of 21. Tr. 170-71.

On February 28, 2012, Dr. Whiteman completed a mental medical source statement wherein he found that plaintiff had marked limitations in his ability to understand and remember short, simple instructions, carry out simple instructions, interact appropriately with supervisors, and interact appropriately with co-workers. He found extreme limitations in his ability to understand and remember detailed instructions, carry out detailed instructions, ability to make judgments on simple work-related decisions, respond appropriately to work pressures, and respond appropriately to changes in a routine work setting. He found moderate limitations in his ability to interact appropriately with the public. Tr. 172-73.

## III.
## STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). It is "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial

evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's."  *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Conflicts of evidence are for the Commissioner, not the courts, to resolve."  *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## IV.
## LAW AND ANALYSIS

### A.  *Burden of Proof*

The burden of proving that he or she suffers from a disability rests with the claimant.  *Perez*, 415 F.3d at 461.  The Social Security Administration defines a "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[3]; (3) whether the claimant's impairment meets or

---

[3]  A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).  Basic work activities are defined at 20 C.F.R. § 404.1521(b).  The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).  According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

> equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520).  If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy.  *Id.*  "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding."  *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step.  *Id.* (citing 20 C.F.R. § 404.1520(a)).  On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step.  *Id.*  Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC).  *Id.*  "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record."  *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)).  Specifically, in determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which these symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; Social Security Ruling 96-8p.  The ALJ must also consider any medical opinions (statements from acceptable medical sources) that reflect judgments about the nature and severity of impairments and resulting limitations.  20 C.F.R. § 404.1527, Social Security Rulings 96-2p, 96-6p.  The claimant's RFC is considered twice in the

---

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process.  20 C.F.R. §§ 404.1520, 404.1523.  A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled.  *Id.*

sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work.  *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was not disabled at Step 5 of the sequential analysis. The ALJ found that based on testimony from a vocational expert, plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers which plaintiff can perform.

### B.  *Plaintiff's Claims*

In his appeal plaintiff argues that substantial evidence does not support the ALJ's decision.  Specifically, he sets forth the following arguments:

1. The Appeals Council failed to follow its own policies and procedures regarding the receipt of additional evidence.

2. Plaintiff's waiver of the right to counsel is invalid.

3. The ALJ posited a defective step-five hypothetical.  The vocational expert's responses to the defective question are meaningless.

We now consider those claims in the order in which they were raised.

### 1.  **Did the appeals council fail to follow its own policies and procedures regarding the receipt of new evidence?**

Plaintiff argues that the Appeals Council erred when it failed to expressly determine whether plaintiff's post-hearing submission of evidence met the "new and material" evidence standard.  Plaintiff cites 20 CFR 416.1470(b) in support of his argument which states,

> In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.  …  It will then review the case if it finds that the administrative law judge's actions, findings, or conclusion is contrary to the weight of the evidence currently of record.

Plaintiff submits that the new evidence, a report by psychologist Jerry L. Whiteman, reveals that plaintiff's cognitive and mental impairments were more limiting than the ALJ acknowledged in his opinion.  Thus, he contends that the Appeals Council should have overturned the ALJ's decision.

The Commissioner argues that the record reflects that the Appeals Council properly considered the post-decision evidence.  Citing *Higginbotham v. Barhart,* 405 F.3d 332,336 (5th Cir. 2005), the Commissioner maintains that the Council's decision to deny review was proper and any action by the council is not separately reviewable by this court.  We agree.

Here, the Appeals Council clearly considered Jerry L. Whiteman's psychological evaluation dated February 24, 2012.  In its Order dated September 21, 2012, the Appeals Council stated that it "has received additional evidence which it is making part of the record."  Tr. 4.  It listed as additional evidence the following exhibit:

> Exhibit 11E        A brief from Anthony E. Mitchell dated February 20, 2011 [sic] and additional medical evidence.

*Id.*  Exhibit 11E contains the four page report by Dr. Whiteman and his mental medical source statement.  The Appeals Council stated it would review plaintiff's case if it "receive[d] new and material evidence and the decision is contrary to the weight of all the evidence now in the record."  Tr. 1.  It further stated that it looked at the reasons plaintiff disagreed with the Commissioner's decision and the "additional evidence listed on the enclosed Order of the Appeals Council."  *Id.*  A review of the record before this court shows that Jerry L. Whiteman's report is included in Exhibit 11E.  Tr. 200-05.  The Appeals Council concluded that the new evidence did not provide a basis for changing the ALJ's decision.  Tr. 1-3.

In light of the above, it can be said without uncertainty that the Appeals Council considered Jerry L. Whiteman's report.  Plaintiff's argument is without merit.

-12-

Within this assignment of error plaintiff additionally argues that the post-hearing evidence undermines the ALJ's finding that plaintiff had a "limited education."  Plaintiff submits that the ALJ suspected that he was functionally illiterate and should have ordered additional testing in order to get an accurate representation of his mental abilities.   In response, the Commissioner contends that plaintiff's application materials and testimony at the administrative hearing provide substantial evidence to support the ALJ's determination that he had a limited education.

Title 20 C.F.R. § 416.964(b)(1) defines illiteracy as "the inability to read or write." Someone is considered illiterate if he or she "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name.  Generally, an illiterate person has had little or no formal schooling."  *Id.*  It goes on to define limited education as having "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs."   Someone with a "7th grade through the 11th grade level of formal education is a limited education."

Some factors to consider when evaluating an educational level include past work experience, the kinds of responsibilities given when working, daily activities, hobbies, results of testing, and ability to communicate in English.  20 C.F.R. § 416.964(a), (b).

On his application materials plaintiff indicated that he completed 9th grade and at the hearing he testified that he completed either 8th or 9th grade.  Tr. 123, 34-35.  Plaintiff's application materials did not list illiteracy as an issue but rather stated that he could not "read that good."  Tr. 142, 272.  When asked on his application to list physical or mental conditions

(including emotional or learning problems) that limit his ability to work, plaintiff failed to list any mental deficiency.  Tr. 122.  His testimony at the hearing further revealed that he speaks the English language, lives alone, and that he buys his own groceries.  Tr. 35-36.

At the hearing the VE gave testimony concerning several jobs that a person with the same RFC as plaintiff would be capable of performing.  The following colloquy took place between the plaintiff, the VE and the ALJ:

Plaintiff:      Thank you.  So you need no education, in other words?

VE:            Well, you have to have reading or math of up to six [sic] grade, but you have that.

Plaintiff:      I don't know how to read or do math, ma'am.  That's what I'm saying.  I have no education.

VE:            You need to tell the Judge, because I used eighth to ninth grade level.

Plaintiff:      The last time I was here, they said I could have pulled the tickets.  Picking up the ticket is one thing, but if you've got to document something or read something, I have no education, sir.

ALJ:           All right.

ALJ:           And what do you mean the last time you were here?

Plaintiff:      When I got my benefits cut off from working or whatever.  Whatever reason, I don't know why they cut them off, because I can't read, they was cut off.  A gentleman was here and he was giving the same statement about the jobs and I didn't say anything and he was saying I could have been a ticket puller, or anything.  I have no education.  If I pulled a ticket for your car, I couldn't write it down, what kind of car you was driving.  I have no education.  I can't read or write.

. . .

ALJ:           Okay.  So, why don't you let me put what you just said in a form of a question to [the VE] so you will get your question answered.  Okay?

At this point in the hearing the ALJ altered his original hypothetical question and asked the VE to assume the individual was functionally illiterate.  The VE testified that the jobs she

-14-

previously listed would not apply to such a person but she did list a job as a small assembly worker that would meet this limitation.  Tr.  45-46.  In his findings the ALJ stated,

> The claimant also testified that he was limited in his job search due to his complete inability to read, an allegation not corroborated by the medical record[s] or third party statements and which is inconsistent with reported 9th grade education, his obtaining a driver's license, and his report of not being able to "read that good" (Exhibit 4E)[4].

Tr. 23.

Despite plaintiff's testimony to the contrary, we cannot say that the ALJ erred in concluding that he had a limited education.  We find that substantial evidence, such evidence as a reasonable mind might accept as adequate to support a conclusion, exists.  *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

We are further mindful of the fact that when applying the substantial evidence standard, we "may not reweigh the evidence or substitute [our] judgment for the Commissioner's."  *Id.*  "Conflicts of evidence are for the Commissioner, not the courts, to resolve."  *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

We have also considered the post-judgment evidence submitted to the Appeals Council which is properly a part of this record on review.  We are not persuaded by the report prepared by Dr. Whiteman.  The report indicates that Dr. Whiteman saw plaintiff on one occasion and that was after the ALJ had issued his opinion denying benefits.  His report notes that plaintiff was unable or unwilling to recite the alphabet, did not know who the current president of the United States was, refused to make any effort to count by two's or by three's, and would not make any effort to spell the word "girl" or "boy."  Tr. 170.

---

[4] Exhibit 4E is an adult function report which was completed by plaintiff on June 18, 2010.  Tr. 137-44.

Further while Dr. Whiteman opined that plaintiff's cognitive abilities and capacity for adaptive behavior possess moderate deficits which appear to be life-long existing prior to the age of 21, he does not indicate in his report that he reviewed any of plaintiff's educational records or any medical records of his treating or examining physicians.  Additionally plaintiff admitted to Dr. Whiteman that he has never been in any psychological care and the medical records in evidence do not suggest that he has any mental impairment.

In sum, we find that Dr. Whiteman's opinion is not supported by any medical evidence and does not overcome the substantial evidence supporting the ALJ's decision.  We do not find that the post-hearing evidence submitted substantially dilutes the record to the extent that ALJ's determination is insufficiently supported.

### 2.    Did the ALJ deny plaintiff the right to counsel?

Plaintiff argues that at the hearing on May 23, 2011, the ALJ failed to properly advise him of his right to counsel.  Citing the case of *Clark v. Schweiker,* 652 F.2d 399, 403 (5th Cir. 1981), plaintiff argues that, since he was unrepresented at the hearing, the court was required to inform him of how an attorney could aid him in the proceeding, the possibility of free counsel or a contingency fee arrangement, the limitation of attorney fees to twenty-five percent of past due benefits, and the requirement of court approval of fees.  Plaintiff contends that the ALJ did not explain how an attorney could help him "in attaining and presenting evidence and/or requesting a post-hearing consultative examination of a documentary nature, or how counsel could assist in preparing witness testimony of family members, including the claimant and/or requesting the appointment of expert witnesses, including questioning or cross-examining government consultative examiners or medical and vocational experts."  Doc. 8, p. 8.  Plaintiff claims he was prejudiced by this error.

The Commissioner asserts that, prior to the hearing, plaintiff received numerous written notices advising him of his right to counsel including the right to free representation and the limitation of attorney fees.  The Commissioner also asserts that at the hearing the ALJ confirmed orally that plaintiff received these notices and wished to proceed without an attorney. Additionally, plaintiff signed a Waiver of Right to Representation on the day of the hearing. Relying on *Castillo o/b/o Castillo v. Barnhart,* 325 F.3d 550, 552 (5th Cir.2003), the Commissioner contends that the numerous written notices along with an oral reminder at the hearing of his right to counsel is sufficient to proceed without representation.

A social security claimant does not have a constitutional right to counsel at a social security hearing, *Goodman v. Richardson,* 448 F.2d 388 (5th Cir.1971), but does have a statutory right to have counsel present at a hearing.  42 U.S.C. § 406, 20 C.F.R. § 404.1705.  A claimant may waive his right to counsel if he is given sufficient information to enable him to intelligently decide whether to enlist the services of an attorney or to proceed without counsel.  "'Sufficient information' includes explanations of the possibility of free counsel, a contingency agreement, and the limitation on attorney's fees to 25% of past due benefits awarded." *Watson v. Astrue,* 2008 WL 4072831 at *2 (W.D.La.2008)(citing *Clark v. Schweiker,* 652 F.2d 399, 403-04 (5th Cir.1981)).  A mere lack of counsel will not automatically invalidate an ALJ's decision; rather, the claimant must show that he was prejudiced thereby.  *Brock v. Chater,* 84 F.3d 726, 729 n. 1 (5th Cir.1996).  To establish prejudice a claimant must show that he "could have adduced evidence that might have altered the result."  *Id.* (citing *Kane v. Heckler,* 731 F.2d 1216, 1220 (5th Cir.1984)).

In this case the record reflects that plaintiff was given notice of his right to an attorney on several occasions in advance of the hearing.  Tr. 62-68, 72-79, 87-94.  Included in the notices

was an informational pamphlet entitled "Your Right To Representation" which included information regarding how an attorney could help him, attorney fee agreements, the limitation of fees to no more than 25% of past due benefits, and a list of organizations that could help him secure counsel.  The record also reflects that at the hearing plaintiff signed a Waiver of Right to Representation in which he acknowledged that he understood his right to representation, voluntarily waived that right, and acknowledged receiving information about how to obtain a representative prior to the hearing.  Tr. 102.  Also, at the outset of the hearing the ALJ questioned plaintiff regarding waiving his right to representation.  The ALJ stated:

> Now, you're not represented by anybody.  I don't see a lawyer or somebody like a lawyer sitting there with you.  I know you filed an application back in 2009, which was denied and you did nothing with that.   At that time you were verbally told about your right to a representative.  With respect to this claim, you were verbally told about your right to a representative when you filed the claim.  You were sent a bunch of information about it, as well.  During the course of the time since you filed this claim, when you asked for a hearing from my office, we sent you information as well, including a list of organizations that would provide [a] representative for free or a reduced charge.  You've been notified about your right to a representative.  In this claim itself, about eight times at this point.   We sent you a development questionnaire, what we call a development questionnaire and you put down on there that you weren't represented and you didn't know whether you were going to be.  So, you're sitting here today, is it fair to say, am I correct, that you do know you have the right?

Tr. 44-45.  Plaintiff recognized that he had the right to a representative and agreed to proceed with the hearing without a representative.  Tr. 34.

We conclude that the numerous written notices to plaintiff along with the fact that the ALJ gave an extensive verbal reminder at the hearing of his right to counsel, sufficiently informed him of his right and that he validly consented to proceed without representation.  Furthermore, even if plaintiff did not validly waive his right to proceed without representation he points to no evidence that would have been adduced at the hearing that could have changed the

result had he been represented by an attorney. Therefore, plaintiff has failed to demonstrate that he was prejudiced by the absence of a representative at the hearing.

### 3. Did the ALJ ask the vocational expert a defective question?

Plaintiff argues that the ALJ erred by failing to include plaintiff's impairments of diabetes mellitus, hypertensive vascular disease, obesity and osteoarthrosis in his hypothetical question to the VE.

The Commissioner maintains that the ALJ's questions to the VE accounted for all of plaintiff's severe impairments by incorporating them into his RFC determination. By including all of the limitations and disabilities recognized by the ALJ, the Commissioner submits the questions were proper.

The hypothetical question that an administrative law judge poses to a vocational expert need only incorporate the disabilities that the administrative law judge recognizes. *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir.1994). If the administrative law judge's hypothetical omits a limitation "and the claimant or his representative is afforded the opportunity to correct deficiencies in the administrative law judge's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the administrative law judge's findings and disabilities recognized but omitted from the question)," there is no reversible error. *Id.* at 436.

In *Bowling v. Shalala*, the Fifth Circuit determined that:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to reasonably incorporate all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted

from the questions), a determination of non-disability based on a such defective question cannot stand.

*Id.* at 436.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Fields v. Bowen,* 805 F.2d 1168, 1170 (5th Cir.1986). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995), (citing *Fields*, 805 F.2d at 1170).

We find that the hypothetical the ALJ asked in this case[5] was not defective as the question reasonably incorporated all of the limitations recognized by the ALJ. The ALJ here asked the vocational expert a hypothetical question that included the RFC that he found was supported by the record. Further, plaintiff was given the opportunity to cross-examine the vocational expert and suggest any defects in the hypothetical question. We therefore find this argument without merit.

### C.   *Plaintiff's Subsequent Application for Benefits*

In a supplemental pleading plaintiff submits evidence that a subsequent application for supplemental security benefits was granted on February 20, 2014. Doc. 18. Plaintiff argues that this subsequent award supports his assertion that his low IQ score satisfied the per se or presumptive entitlement to benefits.

---

[5] The ALJ asked the VE, "I'd like you to assume a younger individual as that is currently defined in the CFR Part 416 with the same work history and educational background. If I were to find that that individual can lift and carry twenty pounds occasionally and then frequently, can stand and/or walk a total of two hours out of an eight hour work day, can sit about six hours in an eight hour work day, the individual can occasionally climb ramps and stairs and never climb ladders, ropes or scaffolds, can occasionally balance, stoop, kneel, crouch or crawl. With those limitations, can you identify any occupation such an individual could perform, including any prior work?" Tr. 42

The Commissioner maintains that the February 20, 2014 determination, which comes more than two years following the ALJ's decision in this case, is outside of the administrative record and not properly before this court.  We agree.

The Fifth Circuit case cited by the Commissioner, *Winston ex rel. D.F. v. Astrue,* 341 F. App'x 995 (5th Cir. 2009), makes clear that a subsequent approval of benefits is not relevant to whether or not the ALJ's decision in this case is supported by substantial evidence.  As stated in *Winston*:

> Winston's second assertion—that the district court's error is made plain by the approval of Winston's second application—is similarly unavailing.  Whether a subsequent application is approved is of no moment to the question of whether the prior application was meritorious *at the time of consideration.*  Here, the ALJ determined that the evidence at the time indicated D.F. was not disabled.  We may disturb this judgment only if "there is a conspicuous absence of credible choices or no contrary medical evidence."

*Id.* at 998 (quoting *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)).  Plaintiff's subsequent award of benefits was decided on an entirely different record which is not before us and has no bearing on our decision in this case.

## V.
## CONCLUSION

Based on the foregoing, we find substantial evidence of record and relevant legal precedent support the ALJ's decision that plaintiff is not disabled.  It is therefore RECOMMENDED that the ALJ's decision be AFFIRMED and this matter be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE this 23rd day of January, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE